NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALIT (No. 1) LIMITED, et al.,** | **Civil Action No. 10-2403 (FLW)** |
| **Plaintiff,** | |
| v. | |
| **BROOKS INSURANCE AGENCY, et al.,** | **MEMORANDUM OPINION** |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is a Motion to Compel Production of Documents [Docket Entry No. 57] filed by Plaintiff Alit (No.1) Limited ("Plaintiff" or "Alit"). Defendant American Equity Insurance Company ("AEIC") opposes Plaintiff's motion. The Court has fully reviewed the papers submitted in support of and in opposition to Plaintiff's motion, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth below, Plaintiff's motion to compel AEIC to produce documents is GRANTED in part and DENIED in part without prejudice.

## I.      Background

In 2006, Plaintiff filed a Complaint against Defendants Brooks Insurance Company ("Brooks") and their insurer, AEIC, alleging Brooks' breach of certain binding agreements which permitted Brooks to issue insurance on Alit's behalf.   *Alit (No.1) Limited v. Brooks*, No. 06-4500, [Docket Entry No. 1].   Through the Complaint, Plaintiff sought to compel Brooks to submit to arbitration in accordance with the terms of the Binding Authority Agreements.   The parties exchanged discovery. Per Court Order dated October 26, 2007, Brooks was required to participate

-1-

in arbitration in London and the matter was administratively terminated with the right to reopen upon completion of the London Arbitration. *Alit*, No. 06-4500, [Docket Entry No. 26]. In addition, AEIC, as Brooks' insurer, was required to pay for the costs of Brooks' defense.

As a result of arbitration, Plaintiff was awarded approximately $5.4 million. In May 2010, Plaintiff filed the current action seeking to recover the award directly from AEIC. *Alit (No.1) Limited v. Brooks*, No. 10-2403, [Docket Entry No. 1].

The AEIC policy insures claims which were made against Brooks and reported to AEIC during the policy period, and excludes all claims or potential claims known by Brooks as of the date the policy's inception. In September 2009, AEIC discovered evidence via the arbitration which suggested that Brooks had notice of Alit's potential claim against them prior to applying for insurance with AEIC. AEIC thereafter denied coverage. However, it is undisputed that the evidence discovered by AEIC in September 2009 had been produced to AEIC previously in 2007 as a result of the initial action. Both AEIC and Brooks have filed cross-claims against each other [Docket Entry Nos. 9, 11].

In August 2010, Plaintiff served Requests for Production of Documents and Interrogatories on Defendant AEIC. AEIC provided responses; however, Plaintiff asserts that the responses are deficient. The parties have exchanged significant correspondence on this issue and the Court and the parties are very familiar with the facts underlying this matter as well as the positions taken by both sides. Indeed, a letter Order was issued regarding the discovery dispute on February 18, 2011 [Docket Entry No. 42] and the parties participated in a telephonic conference regarding this issue on April 15, 2011. As such, the Court shall neither restate the facts of this case nor repeat the arguments made in support of and in opposition to Plaintiff's motion at length.

-2-

### A. Plaintiff Alit's Argument

Plaintiff seeks an Order compelling AEIC to "(1) produce certain documents identified in AEIC's October 5, 2010 privilege log; and (2) provide full responses to certain interrogatories and document requests to which AEIC has failed to provide responses on the grounds that the information requested therein is not discoverable." *Plaintiff's Memorandum in Support of Motion to Compel*, Docket Entry No. 57-3, *5. Plaintiff provides a schedule in which it categorically breaks down the documents it seeks. "Part A lists documents that have been provided to third parties; Part B lists documents to or from Ms. Nilam Sharma which are either not protected in the first instance, or for which AEIC has waived privilege; and Part C lists the interrogatories and document requests that AEIC has failed to fully respond." *Id.*

With respect to the documents enumerated in Parts A and B, Plaintiff argues that neither the attorney-client privilege nor the work product doctrine protect them. First, Plaintiff argues that AEIC has waived any protection provided by the attorney-client privilege or work product doctrine because AEIC identifies several documents in its privilege log which are correspondence between AEIC and various individuals associated with Brooks. Plaintiff states that the attorney-client privilege is waived if otherwise privileged materials are provided to outside parties. *United States v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990); *See also In re Teleglobe Communication Corp.*, 493 F.3d 345, 364 (3d Cir. 2007); *Louisiana Municipal Police Employees Retirement System v. Sealed Air Corporation*, 253 F.R.D. 300, 305 (D.N.J., 2008). Plaintiff further asserts that the privilege of the work product doctrine is waived when a disclosure enables an adversary to gain access to the information. *See Louisiana Municipal* citing *Westinghouse Elec. Corp. V. Republic of Phil.*, 951 F.2d 1414 (3d Cir. N.J. 1991). Plaintiff argues that, because AEIC's

privilege log indicates that AEIC provided the materials at issue to Brooks (whom Plaintiff asserts is an adversary), AEIC has waived any protection from the attorney-client privilege or the work product doctrine.

Plaintiff next argues that the attorney-client privilege and work product doctrine do not protect documents which are prepared in the ordinary course of business. *Rockwell*, 897 F.2d at 1265-66; *United States v. Ernstoff*, 183 F.R.D. 148, 156 (D.N.J. 1998). With respect to the work-product doctrine, Plaintiff states that AEIC bears the burden of showing that the privilege applies. *Louisiana Municipal*, 253 F.R.D., at 305 (*citing Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982)). Further, Plaintiff states that the Third Circuit has adopted a "two part test for ascertaining whether the documents or things at issue should be protected under the work product doctrine." *Id. (citing In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003)). The first part requires the court to determine whether "litigation could reasonably have been anticipated." *Id. (citing In re Gabapentin*, at 183). The second part requires a determination of whether the documents were prepared "primarily for the purpose of litigation." *Id.* Plaintiff also cites to a recent decision in this District which addresses the issue of work-product documents in insurance cases. *Westwood Products, Inc.*, *v. Great American E & S Ins. Co.*, No. 10-3605, 2011 WL 3329616, 15 (D.N.J., August 1, 2011). Although Plaintiff never expressly states it, the Court infers that it is Plaintiff's contention that the documents enumerated in Parts A and B were prepared by AEIC in the ordinary course of business and, thus, are not protected by the work product doctrine. Plaintiff does not further address the attorney-client privilege in this section of its brief.

Plaintiff next asserts that Nila Sharma, AEIC's London representative, was not truly acting as AEIC's counsel. As such, Plaintiff argues that correspondence to and from Ms. Sharma is not

protected by the attorney-client privilege or the work product doctrine and Plaintiff requests production of the documents enumerated in Part B.  The essence of Plaintiff's argument is that, "while Ms. Sharma is an attorney, in the instant case AEIC used Ms. Sharma and her firm... as claim adjusters.  Therefore, neither the attorney-client privilege nor the work product doctrine protect Ms. Sharma's communications from discovery."  *Plaintiff's Memorandum* at *14.  Plaintiff also points out that Ms. Sharma is not admitted to practice law in New Jersey.  As such, Plaintiff asserts that any commentary given by her regarding New Jersey law on coverage issues is gratuitous.  Plaintiff devotes much of its brief to addressing Ms. Sharma's role as a non-attorney in this litigation and in the arbitration held in London.

Plaintiff further asserts that AEIC relied on information gathered by Ms. Sharma to disclaim coverage.  As such, Plaintiff argues that production of those documents is necessary to permit Plaintiff, and the fact-finder at trial, to "probe" these documents to determine the adequacy of the content of the investigation.  Plaintiff contends that AEIC may not use the attorney-client privilege as both a sword and a shield by relying on Ms. Sharma's communications, but then refusing to produce those documents in discovery.

Plaintiff also argues that AEIC's reliance on documents collected by Ms. Sharma and communications from Ms. Sharma regarding the arbitration have put the documents and communications between AEIC and Ms. Sharma at issue.  Plaintiff asserts that reliance on these documents triggers the "advice of counsel" defense even though AEIC has not expressly pled this defense.  Because Plaintiff concludes that AEIC intends to prove its defense through use of the privileged materials, Plaintiff asserts that the "at issue" doctrine applies and any privilege is waived. *United States v. Sensient Colors, Inc.*, No. 07-1275, 2009 WL 2905474 (D.N.J., September 9, 2009)

(*citing Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 71 (D.N.J., 1992); *North River Ins. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J., 1992)).

As a general matter, Plaintiff asserts that the materials requested "are necessary to both further its claims against AEIC and relevant to Brooks' defense against AEIC's claims." *Plaintiff's Memorandum* at *24. Plaintiff argues that by filing suit against Brooks, AEIC has waived the protections provided by the attorney-client privilege and the work product doctrine." *Id*. Plaintiff again accuses AEIC of using these protective doctrines as both a sword and a shield by hiding the documents which serve as the basis for their disclaimer.

Furthermore, Plaintiff notes that there is a claim against AEIC alleging that their failure to settle this matter within the policy limits was unreasonable. Plaintiff asserts that AEIC's refusal serves as the basis for Brooks' claims against AEIC. Because Plaintiff has concluded that Ms. Sharma's input had "some bearing on AEIC's coverage determinations and failure to settle this matter," Plaintiff asserts that "Ms. Sharma's communications are directly relevant to the matter at hand." *Id*. at *25. Plaintiff adds that there is no possible way for it to gain access to this information outside of the requested documents.

Finally, Plaintiff argues that AEIC's Claim Handling Guidelines, Underwriting Materials, and information regarding the handling of this specific claim, which are enumerated in Part C, are relevant and discoverable and are being improperly withheld by AEIC. Plaintiff requests production of AEIC's internal guidelines which are applicable to claims similar to the matter at hand.

**B. Defendant AEIC's Response**

Defendant explains that Ms. Sharma was retained as legal counsel for AEIC in London and

that her efforts on behalf of AEIC were "multi-faceted." *Defendant's Brief in Opposition*, Docket Entry No. 60, *10.  AEIC describes Ms. Sharma's functions as being, among other things, to monitor the arbitration between Alit and Brooks and to provide counsel to AEIC.  Defendant asserts that Ms. Sharma did not conduct any independent or affirmative investigation, but that she reviewed the documents exchanged between Alit and Brooks prior to, and during, the arbitration and observed testimony and other proceedings.  AEIC further states that Ms. Sharma consulted with Brooks' independent counsel regarding Brooks' and AEIC's mutual interest in defending against Alit's claim and that Ms. Sharma made suggestions to Brooks' counsel regarding litigation strategy.  In addition, AEIC certifies that "Ms. Sharma provided legal advice regarding other matters potentially impacting coverage as they arose." *Id.*  AEIC argues that the multi-faceted nature of Ms. Sharma's representation does not extinguish the attorney-client privilege.

AEIC explains that, "[i]n the course of reviewing the documents exchanged between Alit and Brooks, Ms. Sharma identified the 2001-era communications which revealed that Alit had asserted that Brooks was in breach of the binding agreements and advised Brooks to 'put its E&O insurer on notice' in 2001, prior to the inception of the AEIC policy." *Id.*  AEIC states that these documents were relevant not only to Ms. Sharma's analysis of Brooks' defense in the arbitration; but that they also were significant to AEIC's coverage rights and obligations.  Therefore, Ms. Sharma forwarded these documents to AIEC along with her comments and opinions regarding same.

AEIC points out that Plaintiff does not distinguish between the 2001-era documents which Ms. Sharma forwarded to AEIC and Ms. Sharma's opinions and analysis of those documents.  AEIC asserts that Plaintiff incorrectly characterizes Ms. Sharma's communications as "investigative records" which were collected in the ordinary course of a claim adjustment. AEIC stresses that Ms.

Sharma did not conduct any independent investigation and that AEIC's privilege log does not reflect the existence of any additional documents or facts which have not already been provided to Plaintiff. Indeed, Plaintiff does not dispute AIEC's contention that the information and documents reviewed by Ms. Sharma in the arbitration and provided to AEIC have been produced during discovery.

AEIC next argues that, even if Ms. Sharma had been acting as a claims handler, her withheld opinions, mental impressions, conclusions and analysis are protected by the work-product doctrine. AIEC asserts that documents are protected under the work-product doctrine if they are "prepared in anticipation of litigation" and AEIC believes that Ms. Sharma's communications regarding the ongoing arbitration meet this standard. FED. R. CIV. P. 26(b)(3)(A). Additionally, AEIC contends that the Court must determine "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *George v. Siemens Industrial Automation, Inc.*, 182 F.R.D. 134, 140-41 (D.N.J. 1998). AEIC further asserts that the litigation need not be imminent "as long as the main purpose behind the creation of the document was to aid in possible future litigation." *Id.* AEIC therefore concludes Ms. Sharma's comments with respect to the 2001-era documents are protected given the 2006 action and the "obvious coverage significance of the 2001-era documents." *Defendant's Opposition* at *13.

In response to Plaintiff's alternative contention that AEIC waived any privilege applicable to Ms. Sharma's communications by placing them "at issue" in this litigation, AEIC argues that Plaintiff has failed to make the requisite showing. As stated above, Plaintiff makes mention in its motion papers of a claim against AEIC for failure to settle and Plaintiff, in part, uses that claim as basis for probing further into Ms. Sharma's communications. AEIC points out that "this Court has

-8-

already dismissed Alit's cause of action against AEIC for failure to settle." *Defendant's Opposition* at *16.  Regardless, AEIC asserts that any claim for failure to settle would still fail to provide a basis for Plaintiff's contention that AEIC placed Ms. Sharma's communications "at issue."

AEIC also contends that the Third Circuit has set forth a three-part test for compelling disclosure of privileged information, which Plaintiff failed to address in its brief.  *In re Kozlov*, 79 N.J. 232 (1979).  AEIC states that, had Plaintiff properly mentioned the *Kozlov* factors, it would have been unable to meet its burden to compel disclosure.  Specifically, AEIC argues that Plaintiff cannot demonstrate "(1) a need for the communications; (2) that such privileged communications are relevant and material to the matter at issue; and (3) that no less intrusive source is adequate." *Defendant's Opposition* at *17.  Regardless, AEIC maintains that it did not put any communications at issue and, as Plaintiff pointed out, AEIC has not pled advice of counsel as part of any defense or claim.

AEIC states that Plaintiff has identified four basic reasons as to why Plaintiff believes it is entitled to "probe" into Ms. Sharma's communications.   First, Plaintiff contends that the "communications may establish when AEIC first learned of Brooks' misrepresentations in its application for insurance." *Id.* at *18.  In response, AEIC asserts that, should Plaintiff wish to challenge AEIC's claim that it first learned of Brooks' alleged misrepresentations in September 2009, far less intrusive means could be utilized to establish this date; such as "a single interrogatory or a question at a deposition." *Id.* at *19.

AEIC next asserts that Plaintiff's second reason for compelling disclosure of privileged information is to determine the sufficiency of AEIC's investigation.  AEIC is unsure what investigation to which Plaintiff is referring.  However, AEIC presumes that the "investigation"

mentioned by Plaintiff refers to "AEIC's efforts to investigate and ultimately uncover the documents evidencing Brooks' awareness of Alit's claim when it applied for insurance from AEIC." *Id.* at *20. AEIC again distinguishes between the 2001-era documents, on which it based its disclaimer, and Ms. Sharma's legal analysis and opinions regarding those documents and the arbitration.  AEIC asserts that Ms. Sharma's analysis and opinions are not relevant to Plaintiff's waiver and estoppel claims. Moreover, AEIC contends that Plaintiff can obtain facts to support its waiver and estoppel claims by less intrusive means.   Thus, AEIC concludes that this basis for compelling production of privileged information fails the third prong of *Kozlov*.

AEIC states that Plaintiff's third argument for compelling disclosure of AEIC's privileged information is to uncover the basis for AEIC's disclaimer of coverage.  Indeed, it its opening brief, Plaintiff accuses AEIC several times of using privilege as both a sword and a shield by "hiding" the documents which contain its reasons for denying coverage.  *See Plaintiff's Memorandum* at *15, *19, *23, *24.  However, AEIC emphasizes that its "coverage position is based entirely on the documentary record establishing Brooks' prior awareness of Alit's claims in 2001;" specifically, the 2001-era documents. *Defendant's Opposition* at *22.  AEIC asserts that "AEIC did not wholesale surrender the attorney-client privilege merely because Ms. Sharma may have pointed out the obvious." *See Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 72 (D.N.J. 1992).  Also, AEIC contends that Plaintiff can obtain this information through other, less intrusive means; therefore, this argument fails the third prong of *Kozlov*.

Finally, AEIC states that Plaintiff's fourth reason in support of its motion to compel the production of privileged documents is that a review of Ms. Sharma's confidential attorney-client communications are necessary to determine whether AEIC's failure to settle was in bad faith.  AEIC

again points out that Plaintiff has no such claim against AEIC because it was dismissed pursuant to the Court's Order dated May 25, 2011 [Docket Entry No. 50]. However, Plaintiff offers this argument on behalf of Brooks. AEIC contends that this argument is without merit because "Brooks' bad faith cause of action against AEIC does not place Ms. Sharma's advice at issue." *Defendant's Opposition* at *23. AEIC points out that it has not raised "advice of counsel" as a defense; which AEIC asserts is necessary to trigger the "at issue" doctrine. Again, AEIC contends that its decision to disclaim coverage was based on the 2001-era documents and that production of those documents establishes a good faith basis for its disclaimer. As with the other arguments, AEIC contends that Plaintiff could obtain this information through less intrusive means, such as depositions. Therefore, AEIC concludes that this argument too fails the third prong of *Kozlov*.

AEIC also asserts that the documents requested by Plaintiff are protected under the common interest doctrine. AEIC explains that, pursuant to the common interest doctrine, the attorney-client privilege may be asserted with respect to communications between different parties and the attorney therefore, if "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." *Laporta v. Gloucester County Board of Chosen Freeholders*, 34 N.J. Super 254, 262 (App.Div. 2001). AEIC argues that, "[i]n the specific context of the insured/insurer relationship, courts in this District have recognized that where[,] as here, counsel for an insured has been paid for by the insurer, the common interest doctrine protects communications between those parties because of the common interest in defeating the third-party claim against the insured." *See North River Ins. Co. v. Philadelphia Reinsurance Corporation*, 797 F.Supp. 363, 366 (D.N.J. 1992); and *Pittston Co.*, 143 F.R.D. at 71.

-11-

As mentioned above, it is Plaintiff's contention that AEIC and Brooks are adversaries. However, AEIC contends that "Brooks and AEIC had a common interest during the Arbitration in defending the claims asserted against Brooks by Plaintiff and it is in this context that the Part A communications were exchanged." *Defendant's Opposition* at *25. AEIC argues that the fact that AEIC and Brooks have since asserted claims against each other related to coverage does not "relegate them to adversarial status with respect to the communications they shared in their common purpose in defeating Alit's claim." *Id.* AEIC distinguishes this case from the cases relied on by Plaintiff.

Finally, AEIC argues that its underwriting and claim handling materials, the materials listed in Part C, are irrelevant and not discoverable. AEIC points out that Plaintiff has not claimed that AEIC has breached any of its own internal guidelines. In light of the fact that Plaintiff's claim is aimed at estopping AEIC from asserting coverage defenses, AEIC concludes that their internal claim handling and underwriting materials are wholly irrelevant.

### C. Plaintiff's Reply

Plaintiff devotes much of its Reply brief addressing Ms. Sharma's role in this litigation and in the arbitration. Plaintiff takes the position that Ms. Sharma acted solely for the interests of AEIC. Plaintiff asserts that she was "hired to monitor the arbitration on behalf of AEIC, and to obtain documents on AEIC's behalf." *Plaintiff's Reply Memorandum*, Docket Entry No. 62, *5. Plaintiff concludes that Ms. Sharma "was acting as a *de facto* claims investigator or adjuster." *Id.* Plaintiff further complains that AEIC cannot adequately describe what Ms. Sharma was doing and that AEIC has repeatedly changed its stance regarding Ms. Sharma's role. Plaintiff describes a history of

AEIC's submissions, interrogatory responses and statements regarding Ms. Sharma's involvement and Plaintiff contends that AEIC has not met its burden of establishing that the documents sought are protected from discovery. *Plaintiff's Reply* at *14.

Plaintiff also argues that, contrary to AEIC's argument, there is no joint or common interest between AEIC and Brooks.  Thus, Plaintiff asserts that the documents sought by way of this motion are discoverable.  Plaintiff further argues that the cases cited by AEIC in support of its position that the common interest doctrine applies are actually inapposite to AEIC's position. *See Plaintiff's Reply* at *11; *North River Ins. Co.*, 797 F.Supp. at 366; and *Pittston Co.*, 143 F.R.D. at 71.  Plaintiff asserts that in those cases, as here, the "common interest" itself is at issue because the insurer is claiming that there is no coverage for the underlying claims. *Pittston Co.*, 143 F.R.D.at 69.  Thus, the courts in those cases found that no common interest existed between the parties in those cases because the insurer and the insured essentially had adverse interests. *Id.*  Further, the *North River* court determined that the common interest privilege did not apply merely because an insured and an insurer may have had a common interest in the outcome of the litigation. *North River*, 797 F.Supp. at 367.  Plaintiff asserts that correspondence between the parties made it clear that AEIC and Brooks had opposing interests; thus the common interest doctrine does not apply and the information requested by Plaintiff is not protected and should be produced.

Finally, Plaintiff argues that even if a protection applied to the documents sought, AEIC has effectively waived the privilege.  Plaintiff addresses the *Kozlov* factors raised by AEIC in their Opposition Brief.  *Kozlov*, 79 N.J. 232 (1979).  Plaintiff explains that its need for the information sought is based on issues of timing, which Plaintiff contends is relevant to its waiver and estoppel defenses. *Plaintiff's Reply* at *16.  In addition, Plaintiff asserts that the information sought is also

relevant to Brooks due to Brooks' claim against AEIC for failure to negotiate in good faith.  Plaintiff further asserts that there is no other way for it to procure this information.  Although AEIC has argued that Plaintiff could obtain this information by way of deposition, Plaintiff expresses concern that it could not.  Plaintiff states that "there is absolutely no assurance[] that any such line of questioning would not elicit an objection based on privilege." *Plaintiff's Reply* at *17.  Thus, Plaintiff posits that there are no less intrusive means of obtaining the information sought by way of this motion.

Plaintiff devotes the final section of its Reply brief explaining the relevance of the information sought to the matter at hand.  As discussed above, Plaintiff has taken this position throughout its pleadings; therefore, the Court will not repeat the arguments again here.

## II. Discussion

Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  As is clear from the language of Rule 26(b), the scope of discovery is broad, but not without limit.  Plaintiff in this case argues that the information sought is both relevant and nonprivileged; thus, Plaintiff concludes that it is discoverable.  AEIC disputes the relevance of the Part C documentation sought and asserts that, even if relevant, the information sought is protected by privilege.

In order to resolve this dispute, the Court must first determine the relevance of the information which is the subject of this motion.  If relevant, the Court must determine whether a privilege applies and, if so, whether that privilege has been waived.  The question of privilege, however, necessarily turns on the Court's determination regarding Ms. Sharma's role and the

relationship between AEIC and Brooks throughout the arbitration and this litigation.  A discussion

on these issues is, therefore, necessary before the Court can properly address the question of what

privileges, if any, apply to the information sought.

### A.  Ms. Sharma

The Court acknowledges, as Plaintiff points out, that AEIC has given Ms. Sharma many titles

throughout the course of this litigation.  However, the Court is less concerned with what Ms. Sharma

was called as It is with the role that she played.  Though not licensed in this jurisdiction, Ms. Sharma

is an attorney who was hired by AEIC to protect their interests.  It is clear from the correspondence

exchanged that she was in place to protect AEIC.  Ms. Sharma observed the arbitration and provided

insight and analysis to AEIC's U.S. counsel.  It is clear that she had no decision-making power

regarding coverage and there is no evidence to suggest that she had direct influence over the

coverage decision.  Indeed, these facts are clearly set forth in an e-mail from Anthony Lennox,

Brooks' counsel, a copy of which Plaintiff attaches to its Motion as Exhibit O [Docket Entry No. 57-

18].  Thus, Ms. Sharma's role cannot be reduced to that of a mere claims adjuster as Plaintiff

suggests.

Further, Mr. Lennox's e-mail also mentions the possibility of Plaintiff's counsel talking

directly with AEIC's counsel rather than through Brooks' counsel (Mr. Lennox).  Mr. Lennox states,

"[w]hilst I see no problem in that, it would, of course mean that AEIC would not have anyone

involved who was aware of the issues on the underlying claims."  The Court finds that to be the very

purpose of Ms. Sharma's involvement.  Ms. Sharma, as an independent observer, could provide

AEIC with unbiased analysis and insight regarding the underlying claims that Mr. Lennox, as Brooks' representative, could not.

For the reasons set forth above, the Court finds that Ms. Sharma was hired, at least in some capacity, as AEIC's attorney.

### B.  AEIC's relationship with Brooks (Common-Interest Privilege)

The "community of interest" or "common-interest" privilege only applies where, as here, the clients are represented by separate counsel. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76(1); *See also In re Teleglobe Communications Corp.,* 493 F.3d 345 (3d Cir., 2007).[1] "If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client... is privileged as against third persons." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76(1).  The theory behind the doctrine is to allow parties who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers. *Id.* cmt. b.   This privilege is most commonly used to compel the disclosure of evidence when parties who previously shared a common interest, have interests that later became adverse.

---

[1]Courts commonly confuse the "Privilege in Common-Interest Arrangements" with the "Privilege of Co-Clients." *Compare* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76(1) *with id.* § 75(1); *In re Teleglobe,* 493 F.3d at 363 n.18.  The former involves parties with common interests who are represented by separate counsel.  The latter involves one attorney acting on behalf of two (or more) clients who share a common interest.  Although the concepts are different, both require a "common interest."

The test for determining whether or not parties share a "common interest" is not well defined, especially in the insurer/insured context. A District Court in South Carolina has taken a strict view of what constitutes a "common interest." *See Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C. 1974)("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."). However, the Restatement allows a more liberal interpretation. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76(1) cmt. e. ("The communication must relate to the common interest, which may be either legal, factual, or strategic in character. The interests of the separately represented clients need not be entirely congruent."). The Supreme Court of Illinois adopted an even broader interpretation of the doctrine. *Waste Management v. International Surplus Lines,* 144 Ill.2d 178, 161 (1991)(holding that the privity of contract and nature of the relationship between insurer and insured compelled disclosure between them because there was no reasonable expectation of privacy even when an attorney for the insured was not in direct communication with the insurer). Given the varying views of "common interest," the dearth of case law in this District defining "common interest" in the insurer/insured context, and the frequent misapplication of the Common Interest Privilege, this Court is faced with a daunting task. This task is further complicated by the procedural posture of the parties arguing the common interest issue.

As discussed above, the common-interest doctrine is most commonly invoked in the insurer/insured context by either the insured or the insurer to compel the disclosure of otherwise privileged information after the parties' positions have become adverse. In this case, we are presented with the unique situation in which a third party is arguing against the existence of a common interest in order to compel disclosure of information exchanged between an insurer and its

-17-

insured.  Plaintiff's argument is that the insurer, AEIC, waived any privilege it may have had to the information sought because it shared that information with the insured, Brooks, whom Plaintiff contends is an outside party.  In response, the insurer is claiming that they have not waived any privilege (attorney-client or work product) by sharing information with the insured, because the insurer and the insured shared a common interest at the time.  Therefore, AEIC is using the Common-Interest Privilege as a defense against Plaintiff's Motion to Compel and AEIC has taken the position that the information it shared with Brooks is protected as to third parties under the Privilege of the Common-Interest Arrangement.

The central question in determining whether the common interest doctrine applies in the insurer/insured context is whether the documents sought were generated with the reasonable expectation of privacy. *See Pittston Co.,* 143 F.R.D. at 69 (citing *Independent Petrochemical Corporation v. Aetna Casualty and Surety*, 654 F.Supp. 1334, 1365 (D.D.C.1986) ("Communications between an insured and its attorney connected with the defense of underlying litigation are normally not privileged vis-a-vis the insured's carrier in subsequent litigation.")); *see also Pittston Co.,* 143 F.R.D. at 70 (citing *Waste Management*, 144 Ill.2d 178); *see also North River Ins. Co.,* 797 F.Supp. at 366 (citing *Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.,* 118 F.R.D. 250, 251 (D.D.C.1987)).  In addition, a significant factor in making this determination is whether or not the insurer is paying for the cost of counsel for the insured. *Id.* Given that there is a general theme that there is no expectation of privacy between the insured and insurer where, as here, there was a common interest in defeating a third party claim and the insurer was responsible for the cost of the insured's counsel, it is apparent to this Court that documents relating to the underlying claim were exchanged between AEIC and Brooks without either party invoking or expressing a concern about

privilege.   The Court is mindful, as was the court in *Pittston*, that "there is considerable difficulty in applying the doctrine where there was actually no common attorney in the underlying litigation and the existence of a 'common interest' is itself at issue." *Pittston*, 143 F.R.D. at 69.  In this case, however, there is no question that AEIC and Brooks shared a common interest in defeating the third party claim, at least up until the discovery of the 2001-era document in September 2009.  Thus, the common interest doctrine does apply and documents prepared by AEIC and Brooks would be discoverable between those parties, but remain confidential as to third parties.

This conclusion is further supported by the fact that AEIC and Brooks freely shared certain communications, which Plaintiff now seeks by way of this motion.  The fact that AEIC and Brooks passed information back and forth indicates that they did not have an expectation of privacy between them with respect to documents related to their common goal of defeating the underlying third party claim.  Moreover, it would be contrary to the very purpose of the common interest doctrine if the Court were to hold that the sharing of information in order to defeat a common adversary would then require disclosure of those shared communications to that common adversary.  The common interest doctrine dictates that those communications remain privileged and undiscoverable as to third parties. Indeed, as discussed above, this is primary the intent of the common interest doctrine.


## III. Analysis

The Court will address these issues as they relate to each category of documents: Part A, Part B, and Part C.

-19-

## A. Relevance

### 1. Part A &  Part B

AEIC does not dispute that the information contained in Parts A and B is relevant.  As such, the Court will not address the relevance of those materials.

### 3. Part C

The Court holds that, to the extent the terms in AEIC's policies triggered AEIC's denial of Brooks' claim, this information should be produced and, indeed, should already have been produced. The Court has addressed this issue twice before: in a Letter Order dated February 18, 2011 [Docket Entry No 42] and during a telephonic conference held on April 15, 2011.  Thus, the information Plaintiff seeks in Part C is relevant and discoverable to the extent it is not protected by privilege.

## B. Privilege

The privileges claimed by AIEC, in general, are the attorney-client privilege, the work product doctrine and/or the common interest doctrine.  Plaintiff argues against the existence of those privileges and insists that, even if they did exist, AEIC has effectively waived them.

### 1. Part A

As set forth above, the Court finds that the Common Interest Doctrine does apply.  Thus, communications between AEIC and Brooks do not serve as a waiver of the attorney-client or work-product privilege.[2]  Further, the Court finds that Plaintiff has failed to meet its burden compelling production of privileged information as established in *Kozlov*.  Plaintiff's purported need for this

---

[2]As discussed above, Plaintiff provides a discussion of the work-product doctrine in its moving papers, but does not directly assert that the Part A communications are not protected by that doctrine.  As such, the Court declines to entertain that argument.

information is to uncover AEIC's basis for disclaimer and to establish what AEIC knew, and when. However, the Court finds that AEIC has sufficiently provided this information.  Thus, the Part A communications are not discoverable by third parties and Plaintiff's motion is denied in this respect.

### 2.  Part B

As set forth above, the Court finds that Ms. Sharma's role was that of an attorney.  As such, her mental impressions, analysis and opinions are protected under the attorney-client privilege, which has not been waived.  Again, the Court finds that Plaintiff has failed to meet its burden under *Kozlov* which would compel the production of the privileged information. Further, the Court questions the relevance of the information sought in this section given the fact Plaintiff does not have an existing claim against AEIC for bad faith in failing to settle.

### 3.  Part C

As discussed above, the information Plaintiff seeks in Part C is relevant and discoverable to the extent it is not protected by privilege.

**III.**   **Conclusion**

For the reasons stated above, Plaintiff's Motion to Compel is GRANTED in part and DENIED in part.  An appropriate Order follows.

Dated: March 20, 2012

 s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**