# STALKER | VOGRIN | BRACKEN | FRIMET

NEW YORK · PENNSYLVANIA · NEW JERSEY · CALIFORNIA

September 24, 2012

**VIA ECF**

Hon. Michael Shipp, U.S.D.J.
United States District Court
Vicinage of Trenton
Clarkson S. Fisher Building
& U.S. Courthouse

      RE: *Alit (No. 1) Limited v. Brooks Insurance Agency
         & American Equity Insurance Company,*
         **Case Number 3:10-CV-02403-MAS-TJB**
         **(Initially filed under Case Number 3:06-04500-FLW-JJH)**

Dear Judge Shipp:

Kindly allow this letter to serve as Plaintiff Alit's Reply in Further Support to its objection to and appeal of Magistrate Judge Bongiovanni's August 6, 2012 Order regarding an ongoing discovery dispute between Plaintiff Alit and Defendant American Equity Insurance Company (AEIC).

We note that in its opposition to Alit's Appeal, AEIC included a cross-appeal. Alit will respond to AEIC's untimely cross-appeal under separate cover and consistent with the Local Rules of Civil Procedure.

  **A. AEIC is arguing a position not supported by the plain language of its policy and not permitted by New Jersey Law**

AEIC does not want the Court to read its policy. Quite simply, AEIC is attempting to confuse the issue of what may be a "claim" in common parlance and what is a "claim" as defined by its policy. Again, we direct this Honorable Court's attention to the definition of "claim" contained in AEIC's policy.

> **D. CLAIM** means a **potential claim** that **you** become aware of during the policy period, or a written demand received by **you** for money or **professional services**, including the serving of a suit or receipt or notification or arbitration which alleges a **wrongful act** by **you** or any other person for

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Hon. Michael Shipp
September 24, 2012
Page 2

> whose **wrongful acts** you are legally responsible.

. . .

> **K. POTENTIAL CLAIM** means that an insured has become aware of a proceeding, event, or development which could in the future result in a **claim** against the insured.

Alit maintains that simply stated- nowhere in the policy does it require Alit, as a third party to the contract, to make any representations to AEIC. Nor are there any notice obligations required of Alit, as a third party claimant, as AEIC would somehow like everyone to believe. If the Court were to accept AEIC's arguments concerning the timing of Alit's understanding of its position relative to Brooks' actions and/or Alit's understandings or intentions at specific junctures, the trigger of coverage would switch from a "claim" made, as defined above, to an "occurrence."

This reading is not supported by the language above, and it is expressly refuted by New Jersey Law. In *SL Industries, Inc. v. American Motorists Insurance Company*, 128 N.J. 188 (1992), the Supreme Court of New Jersey stated that "Insureds expect their coverage and benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third-party, chooses to phrase the complaint against the insured." *Id.* at 199 (*citing National Indem. Co. v. Flesher*, 469 P.2d 360, 365-67 (Alaska 197); *Loftin v. U.S. Fire Ins. Co.*, 106 Ga. App. 287 (1962).

The New Jersey Supreme Court succinctly differentiated the coverage provided under a "claims-made" from the coverage provided by an "occurrence" based policy as such:

> In a claims made policy, the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the dated of the claim against the insured.

*Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 329 (1985)

Thus, the basic difference between these types of policies is that a "claims-made" policy provides unlimited retroactive coverage and no prospective coverage at all, while an "occurrence" policy provides unlimited prospective coverage and no retroactive coverage at all. *Zuckerman v. National Union Fire Ins. Co.*, 194 N.J. Super.

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Hon. Michael Shipp
September 24, 2012
Page 3

206 (1984). The event that invokes coverage under such a policy is "transmittal of notice of the claim to the insurance carrier." *Zuckerman, Id.*

AEIC's contention that Alit's appraisal of Brooks' execution of the Binding Authority Agreements and/or its expressing said concerns to yet another third-party as the basis for a determination that there was a "claim" under the policy would effectively convert the "claims-made" coverage provided by the policy into "occurrence" based coverage, or more accurately hybrid of both. Instances of such coverage are unenforceable in New Jersey as a violation of public policy. *See Sparks v. St. Paul Ins. Co.*, 100 N.J. 495 (1985)(claims made policy that provided no retroactive coverage does not accord with the objectively reasonable expectations of the purchasers of professional liability insurance and would cause the kind of broad injury that precludes the enforcement as violative of public policy).

Clearly, an emphasis on what Alit knew at any juncture as determinative of whether coverage under the policy is triggered converts the coverage under the policy to "occurrence" as such a reading makes the timing of Alit's damage and/or the manifestation thereof relevant. The clear language of the policy only makes the insured's knowledge relevant to the question of coverage.

Further, AEIC's statements regarding Alit's knowledge of the terms of the policy prior to receipt of same in 2006 should be ignored by this Honorable Court. First, AEIC's statement that Alit "should" know the terms of the policy AEIC issued to Alit is speculation, conjecture and wholly irrelevant to what constitutes a "claim" under the policy. We further note that none of the 2002 correspondence between Alit and AEIC state the specific terms of the policy. We do note that at that time, AEIC regarded the June 2002 letter as a "potential claim," a "proceeding, event, or development which could in the future result in a claim against the insured." A true and complete copy of said letter is attached hereto as Exhibit A. It is further noted that, in its December 2002 letter to Brooks, AEIC noted that, there was no "claim for damages" because a "demand for monies or professional services had not been made." A true and complete copy of said letter is attached hereto as Exhibit B. This was AEIC's coverage position in 2002 after performing its "investigation."

Therefore, AEIC's position is not supported by the plain language of its policy and is not permitted under New Jersey Law, as such AEIC's is not entitled to discovery into this irrelevant issue.

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Hon. Michael Shipp
September 24, 2012
Page 4

### B. AEIC is confusing Alit's Defenses to AEIC's claims with AEIC's Defenses to Alit's Claims

In its opposition, AEIC again meanders about its fruitless defenses to its seven and a half year decision to deny coverage. AEIC claims that its "unclean hands" defense is relevant to this matter because Alit has raised estoppel as a defense. It should be noted that Alit raised this defense to AEIC's causes of action, which are equitable in nature. First, we note that the sufficiency and nature of the defenses raised by Alit are not raised in Alit's appeal and, as such, are not before the Court and AEIC's statements and request that The Court review should thus be ignored by this Honorable Court.

"Unclean Hands" is an equitable defense that is only applicable to a request for equitable relief. See e.g. *Ajax Enterprises v. Fay*, 2007 U.S. Dist. LEXIS 65027 (D. N.J. 2007). Alit has not brought an action in equity. The counts in Alit's Amended Counter-Complaint are as follows: Confirmation of an Arbitral Award Pursuant to 9 U.S.C. §201 *et seq*, Declaratory Judgment, Breach of Contract, and Bad-Faith. All of these counts seek a legal remedy, specifically the payment of damages. We note that a Declaratory Judgment Action may be equitable in nature depending on the circumstances. See *Utility Blade & Razor Co. v. Donovan*, 33 N.J. Super. 566 (1955)(Declaratory relief is neither equitable, nor legal in its nature; on the contrary it takes on the color of either, depending upon the issue). The Construction of a contract such as an insurance policy is primarily legal in nature even if equitable principles may be involved. *Ward v. Merrimack Mut. Fire Ins. Co.*, 312 N.J. Super. 162 (1998)(declaratory judgment action regarding the respective parties rights under an insurance contract was legal in nature as plaintiff was seeking contract damages); *Government Employees Ins. Co. v. Butler*, 128 N.J. Super. 492 (1974)(Chancery Division did not have jurisdiction over declaratory judgment action as matter was legal in nature).

AEIC misconstrues the role of the "clean hands" doctrine. The doctrine operates to deny a party the special remedies of equity, leaving it to remedies at law. It does not deny legal rights, or foreclose a defense by a defendant brought into equity. See e.g. *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 132 (N.J. 1962)(*citing Manufacturers' Finance Co. v. McKey*, 294 U.S. 442, 55 S. Ct. 444, 79 L. Ed. 982 (1935)). Thus, "unclean hands" is not a defense available to AEIC in this circumstance, and as such does not justify the imposition of the discovery into otherwise irrelevant matters.

We note, despite this issue not being properly presented to the court, estoppel is available to Alit regardless of the characterization of AEIC's claims as legal or

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Hon. Michael Shipp
September 24, 2012
Page 5

equitable as estoppel has been long recognized by New Jersey Courts as a defense in law and in equity. *See Uppercu Cadillac Corp. v. 536 Bd. St. Corp.*, 106 N.J. Eq. 529 (Ch. 1930)(*citing: Cent. R. Co. v. MacCartney*, 68 N.J.L. 165 (Sup. Ct. 1902)).

Further AEIC's claims are equitable in nature as, for the most part, AEIC's causes of action seek either the modification of the terms of the policy it issued to Brooks or a declaration that it is not required to perform its obligations under the policy. While some of the claims raised by AEIC seek legal damages; specifically, Count One seeking reformation of the policy states that AEIC has "no adequate remedy at law." See docket no. 31.

Finally, we note that, in regard to any alleged "unclean hands" on the part of a third-party claimant, *Esoldi v. Esoldi*, 930 F. Supp. 1015 (D. N.J. 1996), does not inform the issues presently before the court. We note that the *Esoldi* case involved an insurer's reformation of a policy based on the insured's misrepresentations in the application. While the Court did hold that an estoppel defense was unavailable to a third-party to bar the reformation of the policy in that particular instance in light of the insured's fraudulent misrepresentations in the procurement of the policy, it did not stand for the proposition that an equitable defense was available to a claim in law because a third-party claimant raised equitable defenses to the insurer's equitable claim. Again, it is clear that AEIC is attempting to confuse the issues presented by the matter at hand. Certainly, the *Esoldi* decision had no bearing on the applicability of the "unclean hands" doctrine.

We appreciate the Court's attention and consideration of this issue.

Respectfully Submitted,

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Thomas J. Bracken (TJB/8315)

Attach.
TES/da

**STALKER, VOGRIN, BRACKEN & FRIMET, LLP**

Hon. Michael Shipp
September 24, 2012
Page 6


*Cc:*     *Via e-mail*

    Lisa C. Wood, Esq.


    Lawrence P. Bunis, Esq.